IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MIRIAM CAROL HAIRSINE | * | |
| | * | |
| v. | * | Civil Case No. MJG-15-1317 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |

*************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions, Ms. Hairsine's reply, and the supplemental submissions filed by both parties. [ECF Nos. 17, 18, 19, 23, 26]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that both motions be denied, that the Commissioner's decision be reversed in part pursuant to sentence four, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Ms. Hairsine applied for Disability Insurance Benefits on July 14, 2011, alleging a disability onset date of June 1, 2010. (Tr. 147-50). Her claim was denied initially on November 2, 2011, and on reconsideration on February 14, 2012. (Tr. 84-87, 91-92). An Administrative Law Judge ("ALJ") held a hearing on January 7, 2014, (Tr. 31-67), and subsequently denied benefits to Ms. Hairsine in a written opinion dated January 23, 2014. (Tr. 17-30). The Appeals Council declined review, (Tr. 1-7), making the ALJ's decision the final, reviewable decision of

the Agency.

The ALJ found that Ms. Hairsine suffered from the severe impairments of diabetes, psoriatic arthritis, osteoarthritis, and chronic obstructive pulmonary deficiency (COPD)/asthma. (Tr. 22). Despite these impairments, the ALJ determined that Ms. Hairsine retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, or scaffolds; occasional climbing of stairs or ramps; occasional crouching and stooping; no crawling or kneeling; no exposure to hazards such as unprotected heights, moving machinery, or irritants such as fumes, odors, dust, or gases.

(Tr. 23). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Hairsine was capable of performing her past relevant work as a retail clerk. (Tr. 25). Accordingly, the ALJ determined that Ms. Hairsine was not disabled. (Tr. 25-26).

Ms. Hairsine disagrees. She raises several primary arguments in support of her appeal: (1) that the ALJ assigned too little weight to and failed to acknowledge the specialty of her treating rheumatologist, Dr. Dalal; (2) that the ALJ failed to consider evidence from her longitudinal treatment by Dr. Dalal; (3) that the ALJ's comments at her hearing evidenced bias; (4) that the ALJ did not consider her upper extremity limitations; (5) that the ALJ did not provide substantial evidence to support an adverse credibility determination; and (6) that the ALJ relied upon a faulty hypothetical to the VE. In addition, in her supplemental submission, Ms. Hairsine contends that the ALJ's decision was deficient under the Fourth Circuit's recent decision in *Fox v. Colvin*, __ Fed. App'x __, 2015 WL 9204287 (4th Cir. Dec. 17, 2015). Although not all of Ms. Hairsine's contentions are meritorious, remand is appropriate under *Fox*, and also to permit appropriate analysis of the records and opinions from Dr. Dalal and consideration of Ms. Hairsine's complaints of difficulty using her upper extremities. In recommending remand for

additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Hairsine is not entitled to benefits is correct or incorrect.

Beginning with the *Fox* issue, in that case, the Fourth Circuit clarified the evidentiary requirements needed to support an ALJ's finding at step three of the sequential evaluation. Step three requires the ALJ to determine whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

In *Fox*, regarding his findings at step three of the sequential evaluation, the ALJ stated:

> Although the claimant has 'severe' impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations. (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are equivalent to those of any listed impairment of the Listing of Impairments. In reaching this conclusion, the undersigned has considered, in particular, sections 9.00(B)(5) and 11.14.

2015 WL 9204287 at *4. The Fourth Circuit held that the ALJ's analysis was deficient because it consisted of conclusory statements and did not include "any 'specific application of the pertinent legal requirements to the record evidence.'" *Id.* (quoting *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013)). That is, the ALJ did not apply any findings or medical evidence to the identified disability listings and "offered nothing to reveal why he was making his decision." *Radford*, 734 F.3d at 295 (emphasis in original). The Fourth Circuit also rejected the notion that failure to engage in meaningful analysis at step three could constitute harmless error where the evidence of record otherwise demonstrated that the claimant did not meet a listing. 2015 WL 9204287, at *4. Rather, the *Fox* Court emphasized that it is not this Court's role to "engage[] in

an analysis that the ALJ should have done in the first instance," or "to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Id.* at *4-*5. The Court noted that it could not conduct a meaningful review "when there is nothing on which to base a review." *Id.* at *4.

The ALJ's opinion in Ms. Hairsine's case is strikingly similar to that in *Fox*. The opinion reads:

> Particular consideration was given to sections 9.00(B)(5), 1.02, 3.02, 3.03 and 14.09. The State agency physician and psychologist who are skilled and experienced in reviewing records and assessing the impairments and limitation that are documented in those records concluded that the claimant's impairments did not meet or equal the requirements of any section of Appendix 1. The records that were submitted since the State completed its review do not warrant a different determination at the third step of the evaluation process. No treating or examining physician or psychologist has identified medical signs or findings that meet or medically equal the requirements of Appendix 1. Moreover, I reviewed the records and find that the claimant does not have impairments that meet or equal the requirements of any section of Appendix 1.

(Tr. 22-23). Despite the fact that Ms. Hairsine's counsel was not arguing that any particular listing was met or equaled, the ALJ believed that ample evidence warranted identification of five separate listings. However, the ALJ then provided no discussion of the criteria of any of those listings. The opinion thus fails to meet *Fox*'s requirement of a "specific application of the pertinent legal requirements to the record evidence," and I recommend remand for the ALJ to provide an adequate explanation.[1]

Several of Ms. Hairsine's other arguments also appear to merit remand. First, Ms. Hairsine is correct that the ALJ described her longtime treating rheumatologist, Dr. Dalal, as her

---

[1] The Commissioner also argues that *Fox* is not binding precedent because it is not a published decision. (ECF No. 23 at 1). *Fox* is nevertheless indicative of how the Fourth Circuit would likely view an analogous case, as it did in its recent decision in *Brown v. Colvin*, __ Fed. App'x __, 2016 WL 502918 (4th Cir. Feb. 9, 2016). In *Brown*, the Court was presented with a similar step three analysis and echoed its reasoning from *Fox*. Specifically, the *Brown* Court stated "[W]e do not accept Brown's and the Commissioner's invitations to review the medical record *de novo* to discover facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so." 2016 WL 502918, at *2.

"primary care physician." (Tr. 24). The ALJ also suggested that there were "minimal treatment records prior to the date last insured, December 31, 2010," despite the fact that Ms. Hairsine had seen Dr. Dalal regularly going back to November, 2009. (Tr. 24, 296-300, 496-99). Finally, in assigning "little weight" to Dr. Dalal's assessment, the ALJ provided only the conclusory statement that "the objective medical record evidence, including treatment records, does not support these assessed limitations as of the date last insured." (Tr. 25). Ultimately, I recommend remand for the ALJ to provide a thorough analysis of Dr. Dalal's longitudinal treatment records and medical specialty, and to explain the basis for the assignment of less-than-controlling weight.

In addition, one of Ms. Hairsine's primary complaints is the pain in her hands, and her treatment records regularly indicate "bony hypertrophy" and joint polyarthralgia in her hands. *See, e.g.*, (Tr. 297, 496-97). Testimony at the hearing indicates that limitations in bimanual dexterity would preclude Ms. Hairsine from her past relevant work. (Tr. 63). The Commissioner makes several arguments in her brief regarding reasons why the ALJ may have concluded that Ms. Hairsine had no significant upper extremity limitations. Def. Mot. 12. However, in the absence of any discussion of alleged upper extremity limitations by the ALJ, it is impossible for this Court to review whether the ALJ's conclusions were supported by substantial evidence. Thus, on remand, I recommend that the ALJ evaluate whether Ms. Hairsine has any upper extremity restrictions, including those related to dexterity.

I disagree with Ms. Hairsine's contention that the ALJ demonstrated bias against her. Pl. Mot. 22-23. Before hearing testimony at the hearing, the ALJ stated:

> Counsel, I've read your written argument and I hear your written argument. But I don't see why your claimant is at the sedentary level at that point in time. So, again, let's put on a case that's only talking about before December 31st, 2010.

(Tr. 36).  Ms. Hairsine argues that the statement reflects that the ALJ had made up her mind, before the hearing, as to the appropriate outcome of the case.  In fact, however, the ALJ's comment reflects that she was directing counsel to focus his argument on the relevant time period, which was the "point in time" when Ms. Hairsine's limitations must be determined.  The ALJ proceeded to conduct the remainder of the hearing in a fair and respectful manner.  (Tr. 36-67).  Accordingly, I find no basis to direct the Commissioner to assign the remand hearing to a different ALJ.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 18);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 17);

3. the Court REVERSE in part the Commissioner's decision under sentence four; and

4. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated: March 17, 2016                                        /s/
                                                              Stephanie A. Gallagher
                                                              United States Magistrate Judge